IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

RICHARD LEE ECKSTEIN, )
)
    Plaintiff, )
)
) Case No. CIV-18-143-KEW
)
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
)
    Defendant. )

## OPINION AND ORDER

Plaintiff Richard Lee Eckstein (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also, Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 59 years old at the time of the ALJ's decision. He has a high school education and worked in the past as an assistant manager, customer service representative, mortgage personnel, and food quality controller. Claimant alleges an inability to work beginning on November 29, 2015, due to limitations resulting from pneumothorax, hernias, arthritis, epilepsy, vision problems, anxiety, and depression.

### Procedural History

On December 2, 2015, Claimant filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On March 24,

2016, Claimant protectively filed an application for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 27, 2017, the Administrative Law Judge ("ALJ") James Linehan conducted a hearing in McAlester, Oklahoma, at which Claimant appeared and testified. On May 4, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on March 6, 2018, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to reach a proper RFC determination with regard to his mental impairments; (2) failing to reach a proper RFC determination with regard to his physical impairments; (3) finding he could perform his past relevant work at step four; and (4) finding he had acquired skills from his past relevant work that would transfer to

other occupations at step five.

## Mental RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of obesity in combination with hernias and polyosteoarthritis, unspecified. (Tr. 15). He determined Claimant could perform sedentary work with additional limitations. In so doing, the ALJ found Claimant could occasionally lift and carry ten pounds frequently and sit, stand, and walk "alternatively for six hours each activity out of eight hours per day." Claimant could use his hands for grasping, holding, and turning objects up to eight hours per day. He could climb, stoop, kneel, crouch, crawl, and balance up to four hours in an eight-hour day. Claimant should avoid concentrated exposure to dust, fumes, odors, and gases. (Tr. 20).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform her past relevant work as a tax records clerk (Tr. 26). Relying on the VE's testimony, the ALJ also determined Claimant could perform the representative jobs of order clerk, system surveillance monitor, and document preparer, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 27). As a result, the ALJ concluded Claimant was not under a disability from November 29, 2015, her alleged onset date, through the date of the decision. (Tr. 27).

Claimant contends the ALJ failed to account for his mental impairments in the RFC. He argues that based upon the opinions of the state agency psychologists, Jeffrey Bryant, Ph.D., and Douglas Robbins, Ph.D., which the ALJ gave "great" weight, the ALJ should have included limitations in the RFC, as both determined Claimant had mild restrictions in activities of daily living, mild difficulties maintaining social interaction, and mild difficulties maintaining concentration, persistence, or pace. He further argues that because the ALJ gave "partial" weight to the opinion of consulting psychologist Karla McQuain, Ph.D., who determined there was moderate evidence of impairment in Claimant's ability to adapt to change (Tr. 579), he should have included it in the RFC. However, the ALJ was not required to include these restrictions in the RFC. See *Bales v. Colvin*, 576 Fed. Appx. 792, 798 (10th Cir. 2014); see also Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("[T]he limitations identified in the 'paragraph B' and paragraph 'C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings."). The Court finds no error in this regard.

## Physical RFC Determination

Claimant contends the ALJ's RFC determination of his physical impairments is not supported by substantial evidence because the ALJ improperly considered the opinions from his treating physician, Robert Macmillian, M.D.

Dr. Macmillian provided treatment to Claimant beginning in May of 2014, after undergoing hernia surgery in February of 2014. The treatment records show that he continued to provide Claimant regular treatment through at least November of 2015. During this time, Claimant continued to have some issues with his hernias and was noted to have undergone hernia surgery two months prior at his visit with Dr. Macmillian in November of 2015. (Tr. 537-70).

In April of 2016, Dr. Macmillian expressed opinions about Claimant's condition in letter form and also completed a medical source statement. In his letter, he noted:

> [Claimant] has been plagued with multiple medical conditions which in my opinion preclude him from doing meaningful work. These include but are not necessarily limited to chronic hernias of the abdominal wall which are made worse by lifting or manipulating more than 10 pounds at a time. These hernias have recurred despite surgical repair of them. Furthermore, [Claimant] has at times experience[d] great difficulty with a healing of surgical wounds as a result of these hernia repairs.
>
> [Claimant] suffers from severe osteoarthritis of multiple joints which is worst at his knees but also occurs in his hands, ankles and other joints. This precludes him from being able to walk, kneel, crawl, crouch on anything more than an extremely limited basis. [Claimant] suffers from seizure disorder. His seizures are currently well controlled on his current dose of

7

Dilantin, but he experienced flare-ups of this in the past. These flare-ups can potentially result in significant absences from work and impair his ability to do multiple work tasks including operation of heavy machinery.

Based on these conditions, Dr. Macmillan determined he did not believe Claimant was currently capable of full-time or part-time work, but he was hopeful Claimant could perform part-time work in the future. (Tr. 594-95).

On that same date, Dr. Macmillan completed a medical source statement. Consistent with the conclusions reached in his letter, he imposed significant functional limitations on Claimant's ability to work. (Tr. 590-92).

The ALJ referenced Dr. Macmillan's letter and medical source statement in his decision. He gave "partial" weight to Dr. Macmillan's opinions expressed in his letter. He noted they are inconsistent with the evidence of record. He noted the ultimate determination of whether a claimant can work is reserved to the Commissioner. He also determined that his opinion lacked specificity to make it persuasive and was conclusory. (Tr. 24).

With regard to the functional limitations expressed by Dr. Macmillan on the medical source statement, the ALJ declined to assign "controlling weight" to the opinions, but instead assigned them "little weight," because they are not consistent with the evidence in the record, are inconsistent with Claimant's reports of his daily activities, and are internally inconsistent with Dr.

Macmillan's objective findings. The ALJ also noted that it was evident the letter and medical source statement were generated "not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal." He further noted that Dr. Macmillan "was presumably paid for the report." He finally noted that "claimant asks that I accept the functional capacity assessment at face value, without regard to the six regulatory factors for weighing the opinion under the treating physician rule." (Tr. 24-25).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id.* Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

With regard to the opinions expressed by Dr. Macmillan in the letter, the ALJ assigned "partial" weight. However, the ALJ's analysis is not specific enough for the Court to determine which

9

portions were given some weight and which portions were given little if any weight. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). Moreover, although the ALJ noted inconsistencies between the opinions and the evidence in the record, he failed to identify any of these inconsistencies. *See Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify the claimed inconsistencies . . ., his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The ALJ's analysis of Dr. Macmillan's functional limitations for Claimant is also deficient. Similar to his treatment of Dr. Macmillan's letter, the ALJ noted inconsistencies between the functional limitations determined by Dr. Macmillan with the evidence in the record, Claimant's reports of his daily activities, and Dr. Macmillan's own objective findings. However, the ALJ fails to specify the inconsistencies he found. *Langley*, 373 F.3d at 1123. In fact, the ALJ did not discuss the treatment records of Dr. Macmillan in the decision. Moreover, the ALJ suggested Dr. Macmillan's opinions were given to generate additional evidence so Claimant would be found disabled. However, this is not a

10

legitimate reason to reject Dr. Macmillan's opinions. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002) (finding that "an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician"). On remand, the ALJ should re-evaluate Dr. Macmillan's opinion and specifically set forth those portions that are given weight, the portions that are not supported, and specifically discuss the inconsistencies between Dr. Macmillan's opinions with the other evidence in the record, his own objective findings, and Claimant's activities of daily living.

Claimant also argues that the ALJ improperly evaluated his symptoms when determining the RFC. Because the evaluation of Claimant's pain and other symptoms is tied closely to the RFC determination, the ALJ should reconsider his assessment of Claimant' subjective complaints on remand. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").

### Past Relevant Work Determination

Claimant contends the ALJ's step four determination that he can perform his past relevant work is not supported by substantial evidence. However, because the ALJ's re-evaluation of Dr. Macmillan's opinions may result in further limitations in the RFC,

the ALJ should reassess whether Claimant can perform his past relevant work on remand.

### Step Five Determination

Claimant further argues that the ALJ's step five determination is not supported by substantial evidence because the ALJ erred in concluding he had acquired skills from his past relevant work that would transfer to other occupations. Again, because the Court has determined that the ALJ's RFC is not supported by substantial evidence and he must re-evaluate the opinions from Claimant's treating physician, it is possible the ALJ's step five findings may change.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

IT IS SO ORDERED this 30th day of September, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE